## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

    **Plaintiff,**

        **v.**

ERNESTO MORALES-CASTRO,

    **Defendant.**

**CRIMINAL NO.** 12-229 (FAB)

### OPINION AND ORDER

BESOSA, District Judge.

Before the Court is a Report and Recommendation ("R&R") issued by Magistrate Judge Camille Velez-Rive. (Docket No. 77.) The magistrate judge recommends that defendant Ernesto Morales-Castro's ("Morales") motion to suppress, (Docket No. 26), be denied. (Docket No. 77 at p. 24.) After an independent review of the record and defendant Morales' objections to the R&R, (Docket Nos. 78 & 80), the Court **ADOPTS** the R&R and **DENIES** the defendant's motion to suppress.

### DISCUSSION

### I.  Background

The Court declines to rehash all of the facts. Background information or facts will be recounted as needed in the Court's subsequent legal analysis of particular issues. See United States v. Stierhoff, 549 F.3d 19, 21 (1st Cir. 2008).

On March 21, 2012, the Puerto Rico Police Department ("PRPD") executed a search warrant on defendant Morales' home, which is located at Jardines de Cupey Public Housing Project, Building #7, Apartment #77, located in San Juan, Puerto Rico. (Docket No. 1-1 at p. 1.) A municipal judge from the Puerto Rico Court of First Instance, San Juan Division, issued a search warrant on March 13, 2012; the warrant was supported by a sworn statement from Agent Carlos Concepcion-Ramos ("Agent Concepcion"). (Docket No. 77 at p. 1.) During the search of defendant Morales' home, the PRPD found a firearm and oxycodone pills. (Docket No. 1-1 at p. 1.) After this search, in the presence of federal authorities from Homeland Security Investigations ("HSI"), defendant Morales signed a written waiver of his right to remain silent and also gave authorities consent to search his vehicle. Id. at pp. 1-2. After obtaining consent, an agent discovered a hidden compartment in the vehicle containing automatic weapons and ammunition. Id. at p. 2.

Subsequently, defendant Morales was charged with possession with intent to distribute a detectable amount of oxycodone in violation of Title 21, United States Code, Section 841(a)(1); possession of a firearm in furtherance of drug trafficking in violation of Title 18, United States Code, Section 924(c)(1)(A); and possession of a machinegun in violation of Title 18, United States Code, Section 922(o) and 924(a)(2). (Docket No. 8.)

On July 2, 2012, defendant Morales filed a motion to suppress the evidence found during the search of his home pursuant to the search warrant issued by the Commonwealth court. (Docket No. 26.) He also requested a hearing pursuant to Franks v. Delaware, 438 U.S. 154, 155-56 (1978).[1] Defendant Morales argues that the warrant was based on Agent Concepcion's sworn statement, which contained "blatant omissions . . . and implausible allegations." Id. at p. 5. Defendant Morales also argues that because the search warrant was based on an unreliable sworn statement, the search of his home and the subsequent search of his car – even though the latter was based on his consent – should be considered fruits of the poisonous tree, and, therefore, should be excluded. (Docket No. 78 at pp. 21-23.) He also argues that his consent was not given voluntarily and knowingly. Id. at pp. 22-23.

The magistrate judge held a Franks hearing in several sessions. (See Docket Nos. 59-64 & 68-70.) During the hearing, Agent Concepcion discussed how he conducted the surveillance that he used in his sworn statement for the affidavit. The hearing focused on whether Agent Concepcion had his cell phone with him when he allegedly conducted this surveillance and whether records from his cell phone company matched up with his whereabouts.

---

[1] Pursuant to Franks v. Delaware, 438 U.S. 154 (1978), a Franks hearing "is primarily a vehicle for challenging a warrant by impeaching the affiant." United States v. Adams, 305 F.3d 30, 36 n. 1 (1st Cir. 2002).

In her R&R, the magistrate judge denied defendant's motion to suppress.  The magistrate judge provided a summary of the testimonies given at the hearing, (see Docket No. 77 at pp. 4-16), and found that, based on the testimonies, defendant Morales failed to meet his burden to show that Agent Concepcion's statements in the affidavit in support of the search warrant were false. Specifically, she focused on how defendant Morales failed to present a preponderance of the evidence to show that Agent Concepcion could not have been where he had attested to be in the sworn affidavit in support of the warrant application.  Id. at p. 20.  Furthermore, the magistrate judge addressed defendant's arguments regarding the subsequent search of his car and found that the government had established that defendant Morales provided a knowing, written, voluntary, and valid consent to search it.  Id. at p. 24.  Therefore, the magistrate judge recommended that defendant Morales' motion to suppress be denied.  Id. at p. 24.

On November 21, 2012, defendant Morales filed his objections to the magistrate judge's R&R.  (See Docket No. 78.)  On January 18, 2013, he filed a supplement to his objections.  (See Docket No. 80.)  In short, defendant Morales argues that (1) the magistrate judge's failure to find that Agent Concepcion used his cell phone during periods when he was allegedly on surveillance was clear error; (2) the magistrate judge's finding that Agent Concepcion was sufficiently credible to overcome the evidence

demonstrating the falsity of the sworn statement was clear error;
(3) special circumstances are present that require further
testimony from Agent Concepcion; and (4) the magistrate judge's
finding that the search of defendant Morales' vehicle was pursuant
to a voluntary and valid consent was clear error.[2]  (See Docket
No. 78.)  The Court addresses each of defendant Morales' objections
in turn and finds all of defendant Morales' arguments unavailing.

## II.  Legal Standard under 28 U.S.C. § 636(b)(1)

A district court may refer a pending motion to suppress to a
magistrate judge for a report and recommendation.  See 28 U.S.C.
§ 636(b)(1)(B); Fed. R. Civ. P. 72(b); Loc. Rule 72(b).  Any party
adversely affected by the report and recommendation may file

---

[2] Defendant Morales also argues that the magistrate judge
improperly failed to consider a document that he attached to his
reply to the government's response to his motion to suppress,
(Docket No. 46-D).  (Docket No. 78 at p. 7.)  The document,
however, is entirely in Spanish.  (See Docket No. 46-D.)  Local
Rule 5(g) requires all documents not in the English language that
are presented or filed to be accompanied by a certified translation
into English.  D.P.R. Civ. R. 5(g) ("All documents not in the
English language which are presented or filed, whether as evidence
or otherwise, must be accompanied by a certified translation into
English prepared by an interpreter certified by the Administrative
Office of the United States Courts . . .")  Defendant Morales has
had ample opportunity to provide the translation; in light of his
failure to do so, the Court will not consider the document in its
analysis.  See Puerto Ricans for Puerto Rico Party v. Dalmau, 544
F.3d 58, 67 (1st Cir. 2008).  Furthermore, even if defendant
Morales provided an English translation of the document, he fails
to put on any evidence about it and its relevance during the Franks
hearing and, therefore, the Court will not consider it when
reviewing the defendant's objections to the R&R.

written objections within fourteen days of being served with the magistrate judge's report.  See 28 U.S.C. § 636(b)(1).

A party that files a timely objection is entitled to a *de novo* determination of "those portions of the report or specified proposed findings or recommendations to which specific objection is made."  Sylva v. Culebra Dive Shop, 389 F.Supp.2d 189, 191-92 (D.P.R. 2005) (citing United States v. Raddatz, 447 U.S. 667, 673 (1980)).  Failure to comply with this rule precludes further review.  See Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992).  Furthermore, the objecting party must put forth more than "[c]onclusory objections that do not direct the reviewing court to the issues in controversy."  Velez-Padro v. Thermo King de Puerto Rico, Inc., 465 F.3d 31, 32 (1st Cir. 2006).  Even though timely objections to a report and recommendation entitle the objecting party to *de novo* review of the findings, "the district court should be spared the chore of traversing ground already plowed by the Magistrate."  Gonzalez-Ramos v. Empresas Berrios, Inc., 360 F.Supp.2d 373, 376 (D.P.R. 2005) (citing Sackall v. Heckler, 104 F.R.D. 401 (D.R.I. 1984)).  The party's objections must be grounded "in fact . . . and warranted by existing law or a good faith argument for the extension" rather than a reiteration of arguments already considered and rejected by the magistrate judge.  Id.

In conducting its review, a court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations

made by the magistrate judge." 28 U.S.C. § 636 (a)(b)(1);
Templeman v. Chris Craft Corp., 770 F.2d 245, 247 (1st Cir. 1985);
Alamo Rodriguez v. Pfizer Pharmaceuticals, Inc., 286 F.Supp.2d 144,
146 (D.P.R. 2003). Furthermore, a court may accept those parts of
the report and recommendation to which the parties do not object.
See Hernandez-Mejias v. General Elec., 428 F. Supp. 2d 4, 6 (D.P.R.
2005) (citing Lacedra v. Donald W. Wyatt Detention Facility, 334 F.
Supp. 2d 114, 125-126 (D.R.I. 2004)).

## III. Legal Standard for a Franks Hearing

The Fourth Amendment of the United States Constitution states
that:

> The right of the people to be secure in their
> persons, houses, papers, and effects, against
> unreasonable searches and seizures, shall not
> be violated, no Warrants shall issue, but upon
> probable cause, supported by Oath or
> affirmation, and particularly describing the
> place to be searched, and the persons or
> things to be seized.

U.S. Const. amend. IV. In Franks v. Delaware, 438 U.S. 154 (1978),
the Supreme Court established that a criminal defendant has a right
to a hearing to attack, pursuant to the Fourth Amendment, the
statements contained in an affidavit submitted in support of a
request for a search warrant. A Franks hearing, therefore, "is
primarily a vehicle for challenging a warrant by impeaching the
affiant." United States v. Adams, 305 F.3d 30, 36 n. 1 (1st Cir.
2002). A defendant is entitled to a hearing to challenge the
trustfulness of statements given in support of a search warrant "if

he makes a substantial preliminary showing that (1) a statement in the affidavit was knowingly and intentionally false, or made with reckless disregard for the truth; and (2) the falsehood was necessary to the finding of probable cause." United States v. Strother, 318 F.3d 64, 69 (1st Cir. 2003) (citing Franks, 438 U.S. at 171-72). A defendant is only entitled to a hearing if that preliminary showing is made. See United States v. Castillo, 287 F. 3d 21 (1st Cir. 2002). At the hearing, a defendant must first successfully establish by a preponderance of the evidence the allegations of perjury or reckless disregard. Franks, 483 U.S. at 156. Next, a defendant must also show that with those false statements set to one side, the remaining contents are insufficient to establish probable cause, and that, therefore, the warrant must be voided and the fruits of the search excluded. Id.

In this case, the magistrate judge determined that defendant Morales was entitled to a Franks hearing. (Docket No. 77 at p. 4.) Therefore, the Court focuses on the second prong of the Franks analysis, which requires a defendant to make a substantive showing to establish the falseness of the statements given by the affiant.

## IV.  The Defendant's Objections to the Magistrate Judge's R&R

### a.  Findings regarding Agent Concepcion's Alleged Cell Phone Use

Defendant Morales first argues that the magistrate judge committed clear error because of her failure to find that Agent Concepcion used his cell phone during periods when he was allegedly

on surveillance. (Docket No. 78 at pp. 3-6.) The magistrate judge found that defendant Morales failed to establish that Agent Concepcion had the cell phone during surveillance. (Docket No. 77 at p. 19.) To support her conclusion, the magistrate judge focused on Agent Concepcion's testimony that he often does not bring his phone with him when he goes on surveillance. Id. Furthermore, the alleged cell phone used by Agent Concepcion is not registered to him; rather, it is registered to his father. Id. Defendant Morales objects by arguing that Agent Concepcion has indicated that he has used the phone in question, and that there were phone calls and text messages made to his co-workers from that line. (Docket No. 78 at pp. 3-4.) As the magistrate judge found, however, even if Agent Concepcion had carried the cell phone on the dates in question, defendant Morales fails to present any evidence showing that Agent Concepcion was not conducting the surveillance to which he attested in his sworn affidavit in support for the arrest warrant. (Docket No. 77 at p. 20.)

First, defendant Morales' own expert witness, Ricardo Matos-Acosta ("Matos"), a manager of engineering and radio frequency at Claro, testified that the coverage of a cell phone tower depends on a variety of factors. (Docket No. 63 at pp. 12, 13 & 17.) Matos agreed that some cell phone towers can reach as far as ten, fifteen, and even twenty miles. Id. at p. 18. Thus, it is difficult to determine where a cell phone is located based on

the towers and call data.  He also stated that the distance between
Puerta de Tierra in San Juan, where Agent Concepcion's office is
located, and the Cupey II tower, near the housing project that
Agent Concepcion allegedly visited, is about seven miles.  Id. at
p. 18-19.  He cannot tell the reach of the cell phone towers
however, based on the information given to him.  Id. at pp. 20-21.
Each tower, he said, encompasses three different "sectors," or set
geographical locations.  (Docket No. 63 at pp. 12-13.)  He stated
that some of the calls placed on that particular cell phone may be
registered to a number of different towers.  (Docket No. 62 at
p. 47.)  Therefore, the fact that a specific cell phone tower
picked up a signal might not be a reliable determination of where
the cell phone holder was located at the time of the call.  Based
on Matos' testimony, it seems that the cell phone data provides
little or no information about the location of Agent Concepción's
father's cell phone when the calls were placed.

        Next, even if the cell phone data provides any
information about the location of the cell phone, it is unclear
whether Agent Concepcion had the cell phone on him during the dates
in question.  Agent Concepcion indicated that he rarely carries his
cell phone during surveillance.  As the magistrate judge indicated
in her R&R, the cell phone was not one that was provided to law
enforcement agents by Agent Concepcion's employer; rather, the
phone was registered to Agent Concepcion's father.  (See Docket

No. 77 at pp. 19-20; see also Exh. J.)  Defendant Morales did show,
however, that several phone calls and/or text messages were made to
at least one phone number that belongs to Agent Concepcion's co-
worker, Sergeant Javier-Vazquez-Calderon.  (See Docket No. 63 at
pp. 38-43; See Exh. XX.)  But even assuming that Agent Concepcion
had the cell phone on him when he was performing surveillance and
that the towers are indicative of his location, Agent Concepcion's
testimony about his whereabouts and the cell phone data presented
at the hearing actually corroborate the statements in his
affidavit.

In the sworn affidavit which supported his warrant
application, Agent Concepcion stated that on February 22, 2012, he
interviewed an informant around 10:30 a.m. and then proceeded to go
to the Jardines de Cupey Residential Project at about 1:30 p.m.
(Docket No. 32-1 at pp. 1-2.)  At the hearing, he also stated that
he arrived at the housing project at about 1:30 p.m. after speaking
to the informant.  (Docket No. 59 at p. 33.)  The phone calls
logged for the cell phone number in question, which defendant
Morales argues that Agent Concepcion had with him, indicates that
on the morning of February 22, 2012, starting around 11:26:16 a.m.,
the phone was in the Cupey area, with incoming and outgoing phone
calls being made in that region until the early afternoon.  (Docket
No. 60 at pp. 104-114.)  At approximately 4:14:35 p.m., the phone
received an incoming call from the Puerta de Tierra cell site

located in the San Juan region, (Docket No. 60 at p. 114), which is
consistent with Agent Concepcion's statement that after performing
surveillance in the housing project, he returned to his place of
work in Puerta de Tierra.  Id. at pp. 140-144.  Thus, even if Agent
Concepcion had the cell phone and used the phone during those dates
and times, the records support Agent Concepcion's recitation of
events in his affidavit about his surveillance of the Jardines de
Cupey housing project.   Therefore, the Court disagrees with
defendant Morales' argument that the magistrate judge made a clear
error with regard to her findings about Agent Concepcion's cell
phone usage during periods when he was allegedly on surveillance.

   b.    **Findings Regarding Agent Concepcion's Credibility and the
         Falsity of His Sworn Statement**

        Defendant Morales made several objections regarding the
magistrate judge's findings about Agent Concepcion's credibility
and the alleged falsity of his sworn statement.   For example,
defendant Morales argued that the apartment number for apartment 77
in the Jardines de Cupey housing project, which was the apartment
that Agent Concepcion allegedly surveilled, was not visible based
on the photographs that were submitted into evidence.  (See Docket
No. 78 at p. 8; Exh. EE, FF, GG, HH & JJ.)  As the magistrate judge
stated during the hearing, however, defendant Morales' argument
fails because it is unclear whether the photographs of the housing
project contain the view that Agent Concepcion had at the moment of
surveillance.   (Docket No. 59 at p. 50.)   Furthermore, Agent

Concepcion stated during the hearing that by looking at the
specific photographs that were submitted during the hearing, one
cannot see the number above the apartment number.  Id. at p. 50.
Agent Concepcion stated, however, that when one is driving by the
housing complex or driving in reverse to park in the spot that he
parked, one can see the apartment door and the number 77.  Id. at
pp. 50-51.

        Additionally, Agent Concepcion indicated in his sworn
affidavit in support for the warrant that his confidential
informant identified which apartment to look for when standing in
front of that particular apartment complex.  (Docket No. 32-1 at
p. 2.)  Specifically, he stated that the informant told him "that
in the apartment at the second floor, if you are standing in front
of building #7 on the right side, it has a white grill work on the
entrance door and does not have a visible number . . ."  Id.  In
the same sworn affidavit, Agent Concepcion stated that the
particular apartment mentioned by the informant "does not have a
visible number" but that "apartment #77 is located on the third
floor left side and has a visible number."  Id.  Defendant Morales
fails to rebut these statements nor does he provide evidence by
other witnesses – opinion or expert - about how the apartment 77's
number is not visible from those angles.  Id.  In fact, the
photographs submitted by defendant Morales reveal that the
apartment doors are exposed to the outside such that a person who

is standing or sitting in a car in front of the apartment building may have a clear view of any person walking into and out of the apartments.  (See Exh. JJ, KK, & LL.)  Therefore, other than the conclusory statement by defendant Morales in his objections to the magistrate judge's findings, there is no support for defendant Morales' contentions about the visibility of the apartment and apartment number from the street.  Similarly, defendant Morales argues that Agent Concepcion's statement that he did not take photographs during the surveillance is incredible but provides no evidence to support it other than the conclusory statement that he did not provide photographs "because he actually saw no one." (Docket No. 78 at p. 8.)

Defendant Morales also relies on a report and recommendation issued by then Magistrate Judge Justo Arenas, United States v. David Oppenheimer-Torres, No. 04-00028, (D.P.R. filed December 31, 2003)[3], and argues that "the underlying facts and the consequent analysis and findings in Oppenheimer-Torres are instructive in the instant matter."  (Docket No. 80 at p. 2.)  The Court disagrees.  In Oppenheimer-Torres, the magistrate judge focused on how there was "no clear and straight line of sight" to support what the officer allegedly saw.  (Criminal Case No. 04-00028, Docket No. 35 at p. 8.)  As support for this finding, the magistrate judge in Oppenheimer-Torres focused on how a paralegal

---

[3] Hereinafter, "Criminal Case No. 04-028."

from the Federal Public Defender's Office provided a sworn statement about the physical impossibility of having a full view of both apartment doors, contrary to the officer's contention, due to the architecture of the housing project. Id. at p. 5. Unlike Oppenheimer-Torres, defendant Morales provides no such evidence. As stated earlier, the photographs submitted by defendant Morales show that a person standing may see any persons entering and leaving the apartment in question, and from specific views, one may be able to see the apartment doors in question. Therefore, defendant Morales' reliance on Oppenheimer-Torres is misplaced.

Defendant Morales also contends that Agent Concepcion held himself out to be a federal agent on an United States Immigration and Customs and Enforcement ("ICE") form even though he was not a federal agent. (Docket No. 78 at p. 7.) Such behavior, defendant Morales argues, further supports "[t]he impression that Agent Concepcion is careless with the truth . . ." The Court is unconvinced. First, during the Franks hearing, Special Agent Luis Fombellida ("SA Fombellida"), who works for the San Juan Office of HSI, testified about the circumstances regarding the particular forms in question. (Docket No. 63 at p. 61; Exh. 6 & 7.) He stated that when he met with defendant Morales, officers from the PRPD; the CID, which is the Criminal Intelligence Division of the PRPD; and two Task Force agents, at least one of which is a ICE

Task Force Agent,[4] were present.  (Docket No. 63 at pp. 64-65 &
95.)  SA Fombellida stated that he explained several times to
defendant Morales that HSI is a federal agency and that he read to
defendant Morales the Declaration of Rights Form, (Exh. 6), which
is his agency's form for Miranda warnings.  (See e.g., Docket
No. 63 at pp. 65-66; Docket No. 64 at p. 34.)  He also stated that
he verbally explained defendant Morales' rights to him and told him
repeatedly that he did not have to talk to SA Fombellida, and that
defendant Morales understood this as he answered SA Fombellida's
questions.  Id.  SA Fombellida also stated during the hearing that
when he discussed the form with defendant Morales, there was a
individual by the first name of Neftali who was present and
indicated that he was defendant Morales' legal counsel.  (Docket
No. 63 at p. 72 & 74.)  On the Consent to Search form, which is
another ICE form, Agent Concepcion wrote his name and badge
identification number, clearly indicating that he is a local PRPD
agent.  (Exh. 7.)  SA Fombellida, who is an ICE agent, and one
other witness also signed that form.  Id.  Thus, Agent Concepcion
clearly stated his name and badge identification number to show
that he is a local PRPD agent and did not, as defendant Morales
argues, hold himself out to be an ICE agent.  Finally, even if
Agent Concepcion held himself out to be a federal agent, such an

---

[4] SA Fombellida stated that the "ICE Task Force agents" are
local PRPD agents who are assigned to the ICE Division.  (Docket
No. 63 at p. 95.)

act has no impact on his statements in his sworn affidavit in support for the warrant. Again, defendant Morales has not presented any evidence or on-point authority in support of his argument in this regard aside from his own conclusory statements. Therefore, defendant Morales' arguments regarding Agent Concepcion's credibility and the falsity of his sworn statement fail.

      **c.    Defendant's Objections Regarding Special Circumstances That Require Further Testimony from Agent Concepcion**

      Defendant Morales argues that special circumstances require further testimony from Agent Concepcion. (<u>See</u> Docket No. 78 at p. 19.) He makes this argument in a cursory manner and relies on inapposite authority to support his argument. <u>Id.</u> First, defendant relies on <u>United States v. Hernandez-Rodriguez</u>, 443 F. 3d 138, 148 (1st Cir. 2006), to argue that the Court should allow Agent Concepcion to be questioned again. (Docket No. 78 at pp. 19-21.) The <u>Hernandez-Rodriguez</u> court, however, focused on whether a district court judge may reject a magistrate's findings without first hearing the testimony that was the basis for the determination, 443 F.3d at 148, which is inapplicable to the situation in this case. Furthermore, defendant argues that there are "special circumstances" that warrant hearing from Agent Concepcion again. These circumstances are simply repeated arguments that defendant Morales makes in the rest of his objections. The Court has already addressed those arguments above

and find that defendant Morales' arguments fail; thus, his argument that there are "special circumstances" that warrant further testimony from Agent Concepcion must also fail.

Because defendant Morales has not established by a preponderance of the evidence that Agent Concepcion perjured himself or made false statements in reckless disregard such that the remaining contents of Agent Concepcion's affidavit are insufficient to establish probable cause, Franks, 483 U.S. at 156, defendant Morales' motion to suppress is **DENIED**.

### d.   Defendant's Objections Regarding The Search of His Vehicle

Defendant Morales also argues that the magistrate judge made a clear error by finding that the search of his vehicle was pursuant to a voluntary and valid consent.  (Docket No. 78 at pp. 21-25.)  First, he argues that even if the search was pursuant to a voluntary and valid consent, anything discovered from the search was "fruit of the poisonous tree" because the officers obtained consent from defendant Morales while he was detained after an illegal search.  Id. at pp. 21-22.  Next, he argues that the consent obtained by the officers was not voluntary and knowing. The Court finds defendant Morales' arguments unavailing.

The Fourth Amendment prohibits "unreasonable searches and seizures."  U.S. Const. amend. IV.  The exclusionary rule, which excludes evidence seized in violation of the Fourth Amendment, enforces this prohibition on unreasonable searches and seizures.

United States v. Camacho, 661 F.3d 718, 729 (1st Cir. 2011) (internal citation omitted).  "Evidence obtained during a search may be tainted by the illegality of an earlier Fourth Amendment violation, so as to render such evidence inadmissible as 'fruit of the poisonous tree.'"  Camacho, 661 F.3d at 729 (internal citations omitted).

With regards to defendant Morales' first argument, as the magistrate judge found, defendant Morales has not established by a preponderance of evidence that the search performed pursuant to the warrant was illegal under the Fourth Amendment.  The Court agrees with the magistrate judge.  The Court discussed defendant Morales' objections to the R&R earlier, and found no illegal search and no reason to suppress any evidence pursuant to the first search.  Therefore, because there is no illegal search to "taint" any evidence discovered from the second search of defendant's vehicle, defendant Morales' "fruit of the poisonous tree" argument fails.

Next, defendant Morales argues that the consent obtained by SA Fombellida was involuntary because of "his clear expression that he did not wish to give a statement."  (Docket No. 78 at p. 22.)  Defendant Morales provides no evidence, however, to support this contention.  Again, as discussed earlier, SA Fombellida stated during the Franks hearing that he explained clearly, in the presence of defendant Morales' legal counsel, that defendant Morales did not have to speak with him or give his

consent to the agents to search the vehicle. This testimony is
supported by the consent forms signed by defendant Morales. (See
Exhs. 6 & 7.) Not only did defendant Morales sign two different
consent forms to indicate that he knowingly and voluntarily gave
the agents the right to search his vehicle, he also initialed next
to each of his rights detailed in the "Declaration of Rights"
section on one of the forms to indicate that each right was
explained to him. (See Exh. 7; Docket No. 63 at p. 67.) Finally,
SA Fombellida, along with one other agent, signed both of the forms
as a witness to the entire process, and he testified as such during
the Franks hearing. Thus, based on SA Fombellida's testimony, it
seems that defendant Morales understood that he was giving consent
to federal agents to search his car, and that there was no pretense
about what was happening during that meeting. Morales presents no
evidence to counter any of this evidence that the government
established during the hearing. Therefore, because defendant
Morales fails to show that the search of his vehicle followed an
illegal search or that he did not provide the government with a
knowing, voluntary, and valid consent to search, defendant Morales'
motion to suppress the evidence found during this search is **DENIED.**

### CONCLUSION

Having closely considered both the R&R and defendant Morales'
objections, the Court **ADOPTS** the magistrate judge's findings and

recommendations.    Accordingly,  defendant  Morales'  motion  to

suppress is **DENIED**.

      **IT IS SO ORDERED.**

      In San Juan, Puerto Rico, May 30, 2013.

                                    s/ Francisco A. Besosa
                                    FRANCISCO A. BESOSA
                                    United States District Judge